UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE GONZAGA TAPIA,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | Case No. CV 15-3207-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for disability insurance benefits ("DIB"). She claims that the Administrative Law Judge ("ALJ") erred when he discounted her testimony. For the following reasons, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

## II. SUMMARY OF PROCEEDINGS

In December 2011, Plaintiff applied for DIB, alleging that she had been disabled as of December 2009, due to complications from gastric bypass surgery, hypertension, diabetes, carpal tunnel syndrome, headaches, and a torn tendon in her right shoulder.

(Administrative Record ("AR") 134, 138.)  After her application was denied initially and on reconsideration, she requested and was granted a hearing before an ALJ.  In July 2013, she appeared with counsel and testified at the hearing.  (AR 32-46.)  Thereafter, the ALJ issued a decision denying benefits.  (AR 20-25.)  Plaintiff appealed to the Appeals Council, which denied review.  (AR 1-15.)  She then commenced this action.

## III.  ANALYSIS

Petitioner testified that her diabetes caused fluctuations in her blood sugar level that made her sleepy and caused her to need the bathroom and that her hypertension made her confused and "foggy."  (AR 38.)  She also testified that pain in her right shoulder and elbow made it hard for her to hold objects or to lay on her side to sleep and that she could only type for 20 minutes before her fingers went numb.  (AR 39, 40.)  According to Plaintiff, her pain medication made her fall asleep for two or three hours at a time several times a week.  (AR 39.)  Plaintiff explained that she could bathe and dress herself but that she could not stand for longer than 20 minutes at a time because of problems with her knee and could not lift more than a gallon of milk.  (AR 41, 42.)

The ALJ found that this testimony was not credible because: (1) the record, including the results from her surgery, showed that her condition was stable; (2) she exaggerated her pain and symptoms at the hearing; (3) she showed no signs of physical or mental disability at the hearing; (4) she admitted that she quit her job due to her surgery; (5) her daily activities, including living in a house with her five children and driving a car, were inconsistent with her allegations; and (6) she did not appear motivated to work.  (AR 24.)

For the reasons explained below, the credibility determination is reversed.

ALJs are tasked with judging a claimant's credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In doing so, they can rely on ordinary credibility techniques. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Where there is no evidence of malingering, however, ALJs can only reject a claimant's testimony for specific, clear, and convincing reasons that are supported by substantial evidence in the record. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Although the ALJ's reasons for questioning Plaintiff's testimony are legally valid, *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting ALJ can consider objective medical evidence in determining credibility of claimant), *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming ALJ's adverse credibility finding based in part on fact that claimant did not leave his job because he could no longer work); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding ALJ can consider claimant's ability to perform daily activities); *Thomas v. Barnhart*, 278 F.3d 947, 959, 960 (9th Cir. 2002) (ALJ properly discounted claimant's testimony based in part on claimant's "extremely poor work history" that evidenced little propensity to work and on claimant's "histrionic exaggeration" at the hearing), they are not supported by the evidence.

For example, the ALJ found that Plaintiff exaggerated her pain and symptoms at the hearing. This finding, however, is untethered to anything in the hearing transcript. And the ALJ did not specify what behavior he was referring to in his decision. As such, the explanation is too vague for the Court to uphold it. *See, e.g.*,

3

*Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (noting "even if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy.")  The ALJ also found that Plaintiff showed no signs of physical or mental disability at the hearing.  (AR 24.)  This justification for discounting a claimant's testimony has been rejected by the Ninth Circuit Court of Appeals.  *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (noting circuit has disapproved of "sit and squirm" jurisprudence that relies on claimant's failure to manifest symptoms during the hearing) (citing *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985)).

    The ALJ questioned Plaintiff's testimony because it was inconsistent with her reported daily activities.  But the ALJ failed to explain which activities he was referring to and why Plaintiff's ability to perform them undermined her testimony that she was disabled.  This was error.  *See Orn*, 495 F.3d at 639 ("The ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination") (internal quotation marks omitted).[1]

    The ALJ also failed to explain the basis for his finding that Plaintiff appeared unmotivated to work.  The ALJ did not inquire about Plaintiff's attempts to find work, if any.  Moreover, as Plaintiff

---

[1] The ALJ made a mistake when he noted that Plaintiff lives "in a house with her five children who helped around the house[.]"  (AR 24.)  Plaintiff testified that only two of her five children lived with her.  (AR 41.)

4

points out, the record shows that she worked consistently for several decades and, at the time she stopped working, she was earning $60,000 a year, which contracted the ALJ's finding that she was not motivated to work. (Joint Stip. at 11; AR 127, 139.)[2]

The ALJ found that Plaintiff admitted that she stopped working due to her surgery. This is only partly right. The ALJ asked Plaintiff if her surgery was the reason she stopped working. Plaintiff responded, "I stopped at that, at that time because of the surgery. But, not only the, the episodes with my blood sugar starting getting bad -- either I wasn't eating enough I have to be eating every two hours. And when I did eat it caused problems with me . . ." (AR 37.) The ALJ then stopped her, explaining to Plaintiff and to counsel, "Okay. But she can get into that. I just wanted to know about that and your circumstance when you did stop working. Okay. I think you explained it was related to the surgery." (AR 37.) It would have been more accurate for the ALJ to note that Plaintiff stopped working because of the surgery *and* because her blood sugar level was adversely affecting her. This reason thus only partly supports the ALJ's credibility determination.

The ALJ pointed out that the record showed that Plaintiff's condition was stable, she had excellent results from her bariatric surgery, she had lost some weight, and her diabetes mellitus and hypertension were controlled. (AR 24.) The record supports at least some of these findings. In April 2011, Dr. Jorge Mestman, who was

---

[2] The ALJ noted that Plaintiff filed a prior application for DIB in March 2007, which was denied. (AR 22.) Though this prior application be evidence of her desire to stop working, the ALJ did not consider it as such. Moreover, Plaintiff subsequently resumed working and continued to work through 2009. (AR 127.)

treating Plaintiff for her diabetes, reported that she was "very happy" with the results of her December 2010 bariatric surgery: her weight had dropped by 38 pounds to 150 pounds, she felt "much better," and her diabetes mellitus was "well controlled," though Plaintiff complained that her hypertension was still difficult to control. (AR 283-84.)

Further, the record does not contain any treatment records from April 2011 through March 2012. Indeed, Plaintiff admitted that she had not sought or received medical treatment for her allegedly worsening condition between December 2011 and September 2012. (AR 145-46, 152-53.) The ALJ was entitled to infer from this evidence that her condition was not as bad as she claimed.

In the end, of the six reasons cited by the ALJ for questioning Plaintiff's testimony, the Court finds that only two of them--the ALJ's determination that Plaintiff's condition was stable and that her surgery was in part why she stopped working--are supported by the record.[3] Though the Court finds it a close call, it concludes that remand for further consideration of the credibility issue is warranted because, in the context of this case, these two reasons alone are not enough to uphold the ALJ's finding. *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding error is

---

[3] The Agency contends that the ALJ also questioned Plaintiff's credibility because she worked in 2010 (AR 127), after the date that she alleged that she became disabled. (Joint Stip. at 14 & n.3.) The Court disagrees. The ALJ expressly found that this was an unsuccessful work attempt. (AR 22.) Even were the Court to agree with the Agency, Plaintiff's ability to work for several months would not constitute a clear and convincing reason for discounting her testimony in 2013 that she was unable to work. *See, e.g., Lingenfelter v. Astrue*, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (holding evidence of nine weeks of work not valid basis for concluding that claimant was not credible).

harmless only if substantial evidence remains to support the ALJ's credibility finding).

IV. CONCLUSION

For these reasons, the ALJ's decision is reversed and the case is remanded for further consideration consistent with this Memorandum Opinion and Order.[4]

IT IS SO ORDERED.

DATED: August 11, 2016.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\TAPIA, G 3207\Memo Opinion and Order.wpd

---

[4] Plaintiff has requested that the case be remanded for an award of benefits. The Court recognizes that it has the authority to do so but finds that such relief is not warranted because it is not clear that Plaintiff is disabled. See Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5, 2016) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.").